In the Matter of the Application of DICTAPHONE CORPORATION, Petitioner, Respondent, for an Order against JOSEPH V. O'LEARY, as Commissioner of Standards and Purchase of the State of New York, and THOMAS A. EDISON INCORPORATED, Respondents, Appellants.

Third Department, July 2, 1941.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor-General, Isaac I. Marks, Assistant Attorney-General,* of counsel], for the appellant Joseph V. O'Leary, as Commissioner, etc.

*Strange, Myers, Hinds & Wight* [*Ellis J. Staley, Roger Hinds* and *William J. Cahill* of counsel], for the appellant Thomas A. Edison Incorporated.

*Breed, Abbott & Morgan* [*Charles H. Tuttle, Thomas E. Kerwin* and *Richard A. Moore* of counsel], for the respondent Dictaphone Corporation.

CRAPSER, J. The Commissioner of Standards and Purchase of the State of New York on July 20, 1940, issued specifications for dictating, transcribing and shaving machines and accessories and which specifications in the introductory section under "General Information" contained the following provision:

"AWARD: Award shall be made to the lowest responsible bidder conforming to specifications. In the event of tie bids, the decision of the Commissioner of Standards and Purchase shall be final."

The provision as to tie bids was inserted pursuant to a rule adopted by the Commissioner with the approval of the Governor under the authority of the statute.

Since 1934 the bids submitted by the petitioner herein and Thomas A. Edison Incorporated have been classed as identical bids; and the awards have been made to both companies. It is the contention of the Commissioner that the result of the dual awards has annulled the principle of competitive bids required by the State Finance Law.

The Commissioner in his affidavit says that he learned upon investigation that the petitioner was making a practice of leaving dictating machines on trial in various State departments, bureaus and institutions for unnecessarily long periods, sometimes for many months, or for a year or more, with the result of creating pressure or supposed moral obligation on the part of the officials because of the normal depreciation of the machines with such long trial usage towards purchasing the same. That the petitioner was making a practice of furnishing free cylinders for an unreasonably long period, constituting an undesirable sales pressure, with the resulting creation of supposed moral obligation and that the result was the installation and virtual purchase of dictating machines by said departments, bureaus and institutions where no funds were available.

The purpose of establishing and maintaining a central purchasing department for the State is to concentrate, so far as possible, the negotiations and dealings with competing suppliers in one office whose personnel has the necessary experience and does nothing else, and to relieve the personnel of other departments, bureaus and institutions from the distraction of dealing with competing salesmen and contact men, which is thought to be prejudicial to the morale and efficiency of governmental organization.

Section 160 of the State Finance Law provides that the functions, powers and duties of the Commissioner of Standards and Purchase shall belong to the Executive Department and be exercised and performed therein by him through the Division of Standards and Purchase.

Section 161 of the State Finance Law provides for the general powers of the Commissioner of Standards and Purchase and provides that all materials and equipment and supplies required by or for one or more departments, boards, commissions, offices or institutions of the State may be directly purchased or contracted for by the Commissioner of Standards and Purchase as may be determined from time to time by the rules adopted pursuant to this article; and materials, equipment and supplies so required shall be so directly purchased or contracted for by such Commissioner except in cases where, by rule or order, he authorizes the purchase of such materials directly by the department, board, commission, office or institution requiring them.

Section 163 of the State Finance Law provides that the Commissioner of Standards and Purchase, with the approval of the Governor, shall establish and may from time to time amend or repeal, with like approval, rules — and then follow ten subdivisions.

Subdivision 10█ reads: " Providing for such other matters as may be necessary to give effect to the foregoing rules and the provisions of this article."

Section 164 of the State Finance Law provides that all proposed standards and standard specifications shall be submitted to the head of each department and we are not concerned with the provisions of it in this case.

The provision that, in case of tie bids, the decision of the Commissioner of Standards and Purchase shall be final was sent to both the Edison Corporation and the Dictaphone Corporation and they were asked if they would accept the entire contract if awarded them and both companies replied in the affirmative. Therefore, both companies knew that there had been a tie bid since 1934 and that there had been a dual award and that under this new rule the Commissioner had a right in case of a tie bid to make a decision and they both gave their consent to the same.

The general specifications contained the following rule, duly adopted: " 18. Preference will be given to resident bidders of the State, to products raised or manufactured in the State, other things being equal."

This appeal, therefore, presents the following questions: (1) whether the Commissioner had power to make an award upon receiving tie bids from two equally responsible bidders, upon similar products; (2) whether a bidder, who had submitted his bid without objection upon specifications expressly leaving the selection to the Commissioner in the event of tie bids, is pre-

cluded from complaining when the Commissioner, in his discretion, makes the award to the other tie bidder; (3) whether the Commissioner's power was limited or affected, in this case, by general specification 18; (4) whether, in any event, an unsuccessful bidder, under the circumstances of this case, has a grievance which is redressible by mandamus or its modern substitute under article 78 of the Civil Practice Act.

Section 172 of the State Finance Law provides: The Commissioner may make or cause to be made any investigation which he may deem proper for acquiring the necessary information for the exercise of his powers and duties under this article.

Section 174 of the State Finance Law provides: " Contracts with the Commissioner of Standards and Purchase or with a State department or institution, or other agency of a department, shall be let to the lowest responsible bidder, taking into consideration the qualities of the articles proposed to be supplied, their conformity with the specifications, the purposes for which required and the terms of delivery. Bids on materials, equipment or supplies for which standards and standard specifications shall have been established pursuant to this article shall be received in accordance with such standards and standard specifications. All bids may be rejected. The Commissioner shall determine the purpose for which such contracts shall be let."

Competitive bidding is required in all cases involving a purchase of more than one thousand dollars. In the instant case the purchase was more than one thousand dollars and competitive bidding was required but the bidding resulted in no lowest responsible bidder. There was no provision in the rules or in the law to govern such a case. The rule authorizing the Commissioner to make an award in case of tie bids was expressly included in the specifications upon which the bids here involved were received. There is nothing in the State Finance Law that forbids proper rules to govern such a decision. The policy of the State government, in regard to purchases, could not be carried out unless there was some authority to decide in such a case as is here presented.

In this case there were two lowest responsible bidders and the award of the contract went to one of those two lowest responsible bidders. If it was not possible for the Commissioner to make an award to provide for the carrying on of the business of the State under such circumstances then the whole scheme set out in the State Finance Law for the functions, powers and duties of the Commissioner of Standards and Purchase would fail.

It is difficult to define the line which separates legislative power to make laws from administrative authority to make regulations.

The Legislature cannot delegate powers which are strictly and exclusively legislative but the Legislature may certainly delegate to others powers which the Legislature may rightfully exercise itself.

The Legislature, by the provisions of the State Finance Law, has determined the policy of the State and it could and did give to those who were to act under such general provisions powers to follow up the details by the establishment of the rules and regulations necessary to give full force and effect to the legislative act. (*Village of Saratoga Springs* v. *Saratoga Gas, etc., Co.*, 191 N. Y. 123; *Schumer* v. *Caplin*, 241 id. 346; *United States* v. *Grimaud*, 220 U. S. 506.)

There is no question but that the Commissioner of Standards and Purchase, exercising the reasonable power proper and necessary to the efficient administration of the business of the State, made the award. He was careful to give notice to the petitioner and the successful bidder that in case of a tie bid, which had existed for several years, he had the power to make an award. They both understood that and they both signed with full knowledge of the general specifications and the special specifications and the Commissioner's right to make an award in case of a tie bid.

The case of *Standard Oil Co. of New York, Inc.*, v. *Morris* (151 Misc. 345) is not in point. In that case the specifications were so drawn as to make it impossible to determine exactly who was the lowest bidder. The bids were not identical as in this case.

The petitioner is precluded from asserting that the provision in the specifications for the awarding of a contract in the case of tie bids is not binding upon it. The petitioner-respondent is estopped from claiming the right to object to a condition set forth in the specification after having acquiesced in the existence of such a condition by making its bid without protest. (*Matter of Sheffield Farms Co., Inc.*, v. *Ten Eyck*, 252 App. Div. 825; *Arnot* v. *Union Salt Co.*, 186 N. Y. 501; 59 C. J. p. 176, § 297.)

In *Detroit Free Press Co.* v. *State Auditors* (47 Mich. 135; 10 N. W. 171) it is said: " Moreover, the relator has made its bid under the invitation of the Board, and demanded a contract upon it. It is not, therefore, in condition to contest the validity of the proceedings previous to the actual letting. If the proposition for bids was unfair and illegal, a proper remedy might have been found in advance; but a party who participates and competes for the contract is too late afterwards to complain  *  *  *  if its own interest has suffered  *  *  *."

Specification 18 of the general specifications reads: " Preference will be given to resident bidders of the State, to products raised or manufactured in the State, other things being equal."

The general specifications themselves provided as follows: " All proposals issued by the Superintendent will bind bidders to conditions and requirements herein set forth, except as specifically qualified on detailed specification or proposal sheet issued."

This clause provides that as between general specification 18 and the specific qualifications on the proposal sheet which gave the Commissioner the right to decide in the case of tie bids the latter is expressly made controlling.

The Dictaphone Corporation is a New York corporation with its factory and manufacturing facilities in the State of Connecticut. The Edison Corporation is a New Jersey corporation with its facilities and manufacturing plant mostly in New Jersey but is authorized to do business in the State of New York and occupies an entire floor at 444 Madison avenue, New York city, and has branch offices in Albany, Buffalo, Rochester, Syracuse and other cities. It has a certificate of authority from the Secretary of State to do business in the State of New York, it pays taxes in the State of New York and so far as general specification 18 is concerned both can be regarded as residents of the State of New York.

A trading corporation which has filed its designation pursuant to the laws of the State and receives its license is a resident of the State within the contemplation of the law. (*Gaunt* v. *Nemours Trading Corporation*, 194 App. Div. 668; *Webster* v. *Columbian Nat. Life Ins. Co.*, 131 id. 837.)

Therefore, the Commissioner did not violate general specification 18 by awarding the contract to the Edison Corporation.

The petitioner here seeks to mandamus the Commissioner of Standards and Purchase to rescind the award, P-2672, which award was made by the Commissioner to the appellant Edison Corporation herein. Such relief is necessarily based upon the charge that the Commissioner failed to perform the duty specifically placed upon him by law, acted without or in excess of his jurisdiction and violated a rule of law to the prejudice of the respondent. (Civ. Prac. Act, § 1296.)

The petitioner and appellant Edison Corporation submitted tie bids and the Commissioner pursuant to the specifications under which the bids were made, that in case of a tie his decision would be final, awarded the contract to the Edison Corporation. The court below held that the provisions of section 174 of the State Finance Law prevented the Commissioner from legally doing this.

We have here a case where an unsuccessful bidder is seeking to invoke an extraordinary remedy by mandamus to compel the Commissioner of Standards and Purchase to rescind an award which has been made to one of the lowest bidders.

The remedy of mandamus is of an exceptional character; it is not demandable as a matter of right and when such a remedy is sought a clear and unquestionable right must be presented or the writ will not issue. The statute requiring an administrative board to award contracts to the lowest responsible bidder was not enacted for the benefit of bidders but for the benefit and protection of the public. The duty to so award a contract is a public duty to the people at large and is not for the benefit of individuals or the promotion of private interests. No private person has an action for its violation. (*East River Gas Light Co.* v. *Donnelly*, 93 N. Y. 557; *Molloy* v. *City of New Rochelle*, 198 id. 402.)

In *Matter of Gevaert Co. of America, Inc.*, v. *Greeff* (262 N. Y. 651) the Special Term granted the motion of petitioner for a peremptory order of mandamus to compel the defendants to award the petitioner a contract for X-ray films to be used by the department of hospitals of the city of New York; the Appellate Division reversed the order and denied the motion. (239 App. Div. 895.) The petitioner, a New York corporation, was, upon the opening of the bids, found to be the lowest bidder. Several weeks thereafter the department of hospitals permitted another bidder to lower its bid to the same amount as that of the petitioner and awarded the contract to that bidder. The Appellate Division denied the motion on the ground that mandamus was not the proper remedy. The Court of Appeals affirmed the action without opinion. (*Matter of Whitman*, 225 N. Y. 1; 3 McQuillin Municipal Corporations, [1912] § 1239, p. 2705; *People ex rel. Belden* v. *Contracting Board*, 27 N. Y. 378.)

The petitioner cites and relies upon *People ex rel. Single Paper Co., Ltd.*, v. *Edgcomb* (112 App. Div. 604), but that case is distinguishable. In that case it was held that the requirement by a county board of supervisors that bidders for the publication of its journal shall use a printers' union label was against public policy and unlawful. The bid was made knowing that condition but it was an unlawful condition and the bidder had a right to disregard it. No such matter of illegality is involved in the matter before us.

The Commissioner of Standards and Purchase had the power under the law to select in his discretion the lowest responsible bidder and to grant the award to that bidder in the best interests of the State. It would have been within his power to have awarded the contract either to the Dictaphone Corporation or to the Edison Corporation. In his answering affidavit he set forth many reasons in opposition to the motion; he had authority under the State Finance Law to make investigations. The reasons that he set

forth in his answering affidavit are substantial. It appeared to him that the very purposes of the law under which he was operating were being frustrated by the methods of the petitioner, as set forth in his affidavit. The evidence shows no arbitrary or capricious action on the part of the Commissioner or any failure to exercise proper discretion in the granting of the contract.

The petitioner should not be permitted to hold up the business of the State; it was not entitled to a mandamus under all the facts in this case. This court cannot substitute its views for those of the Commissioner of Standards and Purchase and a remedy in the nature of a mandamus was not available to the petitioner.

The order annulling the order and contract with the appellant Edison Corporation should be reversed and the petition dismissed, with fifty dollars costs and disbursements.

HILL, P. J., BLISS, HEFFERNAN and SCHENCK, JJ., concur.

Order annulling the order and contract with the appellant Edison Corporation reversed and the petition dismissed, with fifty dollars costs and disbursements.